This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which awarded permanent custody of appellant's children, Heather H. and Johnny F., and legal custody of her daughter, Victoria H., to appellee Lucas County Children Services Board. For the reasons that follow, this court affirms the judgment of the trial court.
Appointed counsel Ron L. Rimelspach has submitted a request to withdraw pursuant to Anders v. California (1967),386 U.S. 738. In support of his request, counsel for appellant Tammy H. states that, after reviewing the record of proceedings in the trial court, he was unable to find any meritorious, appealable issues. Counsel for appellant does, however, set forth the following potential assignment of error:
"ASSIGNMENT OF ERROR NUMBER ONE:
 "THE TRIAL COURT ERRED IN GRANTING THE LUCAS COUNTY CHILDREN SERVICES BOARD PERMANENT CUSTODY OF APPELLANT'S CHILDREN, HEATHER [H.] AND JOHNNY [F.], FOR ADOPTIVE PLACEMENT AND PLANNING, AND IN GRANTING THE LUCAS COUNTY CHILDREN SERVICES BOARD LEGAL CUSTODY OF APPELLANT'S CHILD, VICTORIA [H.], AS TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 Anders, supra, and State v. Duncan (1978), 57 Ohio App.2d 93
set forth the procedure to be followed by appointed counsel who desires to withdraw for want of a meritorious, appealable issue. In Anders, the United States Supreme Court held that if counsel, after a conscientious examination of the case, determines it to be wholly frivolous he should so advise the court and request permission to withdraw. Id. at 744. This request, however, must be accompanied by a brief identifying anything in the record that could arguably support the appeal.Id. Counsel must also furnish his client with a copy of the brief and request to withdraw and allow the client sufficient time to raise any matters that he chooses. Id. Once these requirements have been satisfied, the appellate court must then conduct a full examination of the proceedings held below to determine if the appeal is indeed frivolous. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements or may proceed to a decision on the merits if state law so requires. Id.
In the case before us, appointed counsel for appellant has satisfied the requirements set forth in Anders, supra. This court notes further that appellant has not filed a pro se brief or otherwise responded to counsel's request to withdraw. Accordingly, this court shall proceed with an examination of the potential assignment of error set forth by counsel for appellant and the entire record below to determine if this appeal lacks merit and is, therefore, wholly frivolous.
The facts relevant to this appeal are as follows. On June 25, 1996, Lucas County Children Services Board ("LCCS") filed a complaint in dependency, neglect and abuse regarding Victoria, Heather and Johnny. In its complaint, the agency alleged that: 1) Victoria had given birth to a baby on April 30, 1996, and the alleged father was Robert S., a man whom appellant allowed to move into the home and with whom appellant also had sexual relations; 2) there were several other males living in appellant's home; 3) Victoria was prepared to testify that appellant knew about the sexual relationship between Victoria and Robert S., but did not attempt to prevent it and actually encouraged it; 4) Victoria moved in with her grandmother after appellant was evicted from their apartment; 5) Victoria reported that there frequently was inadequate food in the house and that her mother used Victoria's Social Security checks to buy drugs or to give money to male friends; 6) Victoria reported that appellant was involved in the use or sale of marijuana or crack cocaine; 7) appellant had attended substance abuse assessment at COMPASS and it was recommended that she complete the out-patient program; 8) appellant informed LCCS that she had no intention of complying with treatment recommendations and that the agency "could just take her kids right now;" 9) Victoria suffered from post-traumatic stress disorder with depression; 10) LCCS had a history of involvement with appellant and the children beginning in 1990 when the agency was given temporary custody of the children for approximately one year; 11) when the agency explained its concerns to appellant about her parenting abilities at a staffing on May 14, 1996, appellant stated that her boyfriend would protect the children; the agency learned that appellant's boyfriend had an extensive criminal history, including assault, theft and drug and alcohol offenses, and was currently incarcerated for an aggravated drug trafficking conviction; 12) appellant had not been sending her children to school on a regular basis; 13) Victoria said she is afraid of her mother and does not want to return to her custody and 14) appellant uses inappropriate forms of physical discipline, including beating the children with a belt.
The trial court granted the agency temporary emergency custody of all three children on June 25, 1996. On August 26, 1996, an adjudicatory hearing was held and the magistrate found Victoria to be an abused child and Heather and Johnny to be dependent and neglected children. Temporary custody of the children was awarded to LCCS that same day.
On June 19, 1997, LCCS filed a motion for permanent custody of the children. LCCS repeated many of the allegations contained in the earlier motion for temporary custody and further alleged that: 1) appellant had recently been indicted on one count of child endangering in connection with the incident which led to Victoria's pregnancy and Robert S. had been indicted on rape charges; 2) all of appellant's children had been sexually molested at one time or another; 3) since obtaining custody of the children, the agency had offered appellant numerous services to address substance abuse, neglect, and her inability to protect her children, including: parenting classes, caseworker services, assistance in obtaining adequate housing, psychological evaluation, substance abuse assessment, counseling, and visitation arrangements for her with the children; 4) appellant had made little or no progress on her case plan, refusing to attend the out-patient program at COMPASS, continuing to deny any culpability for the rape of Victoria, and discontinuing participation in the Parents United group counseling; 5) appellant continued to live with a convicted drug trafficker and had failed to establish independent, stable housing; 6) LCCS had minimal contact with James F., the alleged father of Johnny who appellant admitted had sexually abused all of her children and James F. had not complied with case plan services; 7) Jeronica H., alleged father of Victoria and Heather, had failed to comply with case plan services that included substance abuse assessment and establishing paternity and 8) appellant admitted that at numerous times she violated the no-contact order issued relating to her and Victoria.
The matter proceeded to hearing on December 8 and 9, 1997, and the following relevant testimony was presented. Sallyann Treadaway, a clinical psychologist with Harbor Behavioral Health Care ("Harbor"), testified as to her psychological assessment of appellant in July 1996 after a referral from LCCS. Treadaway stated that appellant's stressors included having her children taken from her custody and past sexual abuse of her children. She stated that appellant denied current substance abuse problems. She testified that appellant reported having been sexually and physically abused as a child and past involvement in four domestic violence relationships as an adult. Treadaway also stated that appellant reported suicidal ideations and admitted being verbally aggressive toward others. She stated that appellant did not seem to have much insight into why she was in her current situation or what she needed to do to improve the situation, into the seriousness of her situation, or into why the children had been removed from her home. Treadaway recommended that appellant attend Parents of Abused Children and participate in individual therapy and a domestic violence group for women. She further diagnosed appellant with adjustment disorder with depressed mood; alcohol and cannabis dependence with sustained full remission by self-report; intellectual borderline function and personality disorder. Treadaway also stated that her evaluation indicated that appellant was having significant difficulty functioning in the various environments of her life, as far as home, relationships and work. She further stated that she believes appellant's personality disorder causes her to have difficulty choosing a safe environment for herself and therefore would affect her ability to provide a safe environment for her children.
Rebecca Davidson testified as to her assessments of appellant and Jeronica H. as an assessment counselor with COMPASS. Davidson said she met with Jeronica H. in October 1997 and recommended an inpatient detox program. She said Jeronica H. did not follow through on the program. Davidson testified that she met with appellant in October 1997 and, based on appellant's statement that she had not used any drugs or alcohol since 1995, did not recommend treatment.
Gayle Robinson testified that she was a facilitator of the Parents of Sexually Abused Children group at Harbor and had contact with appellant there in 1996. Robinson stated that appellant's attendance at group therapy was inconsistent and that she made very little progress toward her goals and objectives under the group plan. She further testified that she thought appellant had minimal insight into the issues presented in the sexual abuse program and minimal interest in working toward the program goals.
Betty Woodard testified that she works at St. Vincent's Medical Center as a chemical dependency counselor for Hope for Families. Woodard stated that she did an intake assessment on appellant in August 1997. She testified that based on the information appellant provided, she concluded that appellant did not need a formal treatment program but recommended a women's support group, mental health counseling, a twelve-step self-help group, chemical dependency education and parenting classes. Woodard stated that appellant attended twenty-two out of a total possible twenty-eight sessions and did not regularly attend the twelve-step program. She further testified that she did not see much progress until about three weeks before the hearing. She attributed the recent changes to the impending court date. Woodard stated that she believes appellant is still practicing her alcoholism and said appellant admitted drinking before coming to sessions. She testified that appellant completed the nutrition classes but not the parenting class. She added that chemical dependency education, twelve-step, and women's support are on-going programs. Woodard stated that appellant is currently still involved in the program. She further testified that she believes appellant has insight into her problems and is capable of change. Woodard stated that appellant eventually found a job and located her own housing, but did not specify dates or whether appellant still held the job.
Mellanie Webb, a caseworker with LCCS, testified that she initially became involved with appellant in August 1995, after the agency received a referral concerning physical contact between appellant and her oldest daughter, Kelly. The agency initiated services in October 1995, but appellant did not follow through after the first few appointments. Webb testified that in March 1996, issues within the family included the concerns with Kelly, Victoria's pregnancy, appellant's relationship with Victoria and Victoria's suicidal feelings and homicidal feelings toward her mother. Victoria was removed from the home at that time and Heather and Johnny were removed in April, after Victoria gave birth.
As to Heather and Johnny's father, James F., Webb testified that he had moved to Nashville and was not often in the Toledo area. She stated that her contact with James F. was sporadic and mainly through court proceedings. Webb further testified that appellant admitted being aware that James F. had molested her daughters but was afraid to say anything because he had threatened her life. She stated that James F. refused assessment or any other services. Webb stated that there has been a no-contact order between James F. and the three girls for the past seven or eight years since the initial allegations of sexual abuse arose in 1990. As to Jeronica H., Victoria's father, Webb stated that he did not comply with any of the case plan recommendations following his drug assessment.
Webb testified that there was presently a no-contact order between appellant and Victoria. Webb further stated that appellant had told her that she had been charged in September 1997 with child endangering and complicity to rape in connection with Victoria's sexual involvement with Robert S. Webb stated that appellant told her she had been in contact with Victoria. Webb testified that she had encouraged appellant to remain involved in Parents United but appellant was not willing to continue after January 1997. She stated that she was concerned about appellant's current involvement with a man who had a criminal conviction for drug trafficking and said that appellant ended the relationship about a month before the hearing. Webb testified that appellant had lived in approximately five places during the pendency of this case, one of which was the site of a drug raid, and said she recently became aware that appellant was no longer working at Wendy's.
Webb testified that all three children were originally placed in relative foster care but those situations did not work out because appellant violated the no-contact order with Victoria and created "chaos" in the other home where Heather and Johnny were placed. Webb stated that Heather was in services to address promiscuity because of concerns about her sexual involvement with adult males and having five sexually transmitted diseases in the past five months. Webb further stated that Johnny had completed individual counseling and was experiencing some problems in school. Webb stated that she feels eleven-year-old Johnny is adoptable and that Johnny's foster mother was considering adoption. She further stated that she believes there is a reasonable probability that thirteen-year-old Heather will be adopted.
Webb stated that she believes long-term foster care is in Victoria's best interest. Victoria's baby is in her custody and Victoria is involved in intense services, including parenting classes, teen enrichment and counseling. Victoria is currently on Prozac for depression and at one time was experiencing delusions. Webb further testified that she believes it would be contrary to the best interest of the three children for them to be returned to their mother. She stated that appellant has not remedied any of the problems that caused the agency to become involved with the family. She further stated that it would be contrary to the best interest of the children to be placed with their fathers. Webb stated that appellant shows no insight into why her children were removed from her home, accepts no responsibility for Victoria's sexual relationship with Robert S. in her home, admits she was having sexual relations with him at the same time, and acknowledges knowing Robert S. had impregnated another minor that lived in their neighborhood.
Webb stated that appellant appears to care about her children but the children have mixed feelings toward her. Appellant attended visitations regularly and was generally appropriate with the children at visitations although there was one incident where she threatened to beat Heather for having her nose pierced.
The agency rested its case and appellant presented the following witnesses. Marlene Beckler testified that she is a newly ordained minister and takes appellant to church with her. She stated that she has known appellant for a little more than one year. She said appellant's attendance at church is good. Beckler also takes Heather to church sometimes and said appellant's demeanor with Heather is "motherly."
Melvin Johnson testified that he is a counselor at Harbor and stated that appellant was referred to him for counseling approximately three months before the hearing. He stated that he has seen appellant three times and has focused on doing what she needs to do to get her children back and on dealing with her history of being sexually abused. Johnson said he has seen improvement during the three sessions as appellant becomes more open and willing to talk and said that he believes appellant is beginning to have insight into the problems surrounding sexual abuse. Johnson said he is just beginning to scratch the surface of appellant's issues and that it could take years for her to successfully complete a term of counseling for her problems.
John France, guardian ad litem for Victoria, submitted a report in which he stated that the objectives of protecting Victoria from further harm and keeping her and the baby in the same household would best be served by granting LCCS legal custody with long-term foster care as the goal. Linda Jones, guardian ad litem for Johnny and Heather, submitted a report in which she recommended that LCCS be granted permanent custody of the children because appellant does not have adequate housing for them and has not completed case plan services, and because neither father appears to be appropriate for placement.
On December 31, 1997, the trial court filed its judgment entry in which it found that: 1) following the placement of the children outside the home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, appellant, James F. and Jeronica H. have failed continuously and repeatedly for six months or more to substantially remedy the conditions causing the children to be removed from the home; 2) there is a reasonable probability that Heather and Johnny will be adopted, adoptive placement would positively benefit the children, a grant of permanent custody would facilitate adoption, and the children's need for a legally secure placement cannot be achieved without a grant of permanent custody, and 3) the children cannot and should not be returned to the care of either of their parents within a reasonable period of time, it would be contrary to the welfare of the children to reunify them with their family, and it is in their best interest to grant the motion for permanent custody. It is from that judgment that appellant appeals.
The sole potential assignment of error raises the issue of whether the trial court's decision was supported by clear and convincing evidence.
R.C. 2151.414 provides in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353
[2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A) (4) of section 2151.353
[2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(12) Any other factor the court considers relevant." [Emphasis added.]
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469.
This court has thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof, we find that there was clear and convincing evidence to support the lower court's finding that it was in the best interest of Heather F. and Johnny F. to grant permanent custody to the Lucas County Children Services Board and in the best interest of Victoria H. to grant legal custody to LCCS. The trial court heard testimony from numerous counselors and social workers that appellant has not made significant progress with her case plan objectives, has little or no insight into the reasons leading to the removal of the children from her home or into how to begin remedying those problems, does not accept responsibility for problems which arose in the home over the years, does not have job or housing stability and has failed to protect her children from sexual abuse. Accordingly, this court finds that the trial court did not err by granting permanent custody of Johnny and Heather and legal custody of Veronica to LCCS and appellant's sole potential assignment of error is without merit.
Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, this appeal is found to be without merit and wholly frivolous. Appellant's counsel's motion to withdraw is found well-taken and is hereby granted. The decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, P.J. ---------------------------- JUDGE Melvin L. Resnick, J. ---------------------------- JUDGE Richard W. Knepper, J. CONCUR. ---------------------------- JUDGE